IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARI COHEN, SHANIE COHEN, COHEN SPECIAL FAMILY TRUST, LOIS COHEN JSK FAMILY PARTNERSHIP LP, DONIEL COHEN,<br><br>Plaintiffs,<br><br>v.<br><br>TZVI FEINER, FNR HEALTHCARE, LLC,<br><br>Defendants. | No. 18 C 7328<br><br>Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs collectively bring this action against Tzvi Feiner and FNR Healthcare, LLC stemming from allegedly fraudulent actions surrounding a string of real estate investments. The 11 Count Complaint brings claims under the Racketeer Influenced and Corrupt Organizations Act (Counts I-III), along with claims for breach of contract (Counts IV-V), breach of fiduciary duty (Count VI), fraud (Counts VII-VIII), accounting (Count IX), constructive trust (Count X), conversion (Count XI). (Dkt. 1). Defendants Zvi Feiner and FNR moved to dismiss under Federal Rules of Civil Procedure 9(b) and 12(b)(6). (Dkt. 12). For the following reasons, the Motion is granted.

**BACKGROUND**

The Court takes the following well-pleaded facts as true for purposes of assessing Defendants' Motion to Dismiss. *Calderon-Ramirez v. McCament,* 877 F.3d 272, 275 (7th Cir. 2017). Essentially, Plaintiffs allege that Feiner engaged in a series of fraudulent investments where he induced significant investments from Plaintiffs by way of false statements and then used the investments to lure in other investors and prop up related entities. *See* (Dkt. 1, ¶ 2) ("Defendants' schemes revolved around dangled promises of substantial profits in return for an initial investment in order to lure in potential victims. Feiner and FNR used their financial investment experience and expertise, as well as other Ponzi schemes, to shroud their schemes from scrutiny and deceived Plaintiffs and other investors for years…Feiner and FNR stole and diverted over $35 million dollars from a wide range of investors…"). A brief breakdown of each investment is provided below.

### Decatur Investment

Starting in at least 2010, Feiner was a real estate investor and nursing home facility operator. (Dkt. 1, ¶ 15). Feiner approached Ari Cohen ("Ari") about investing in a nursing facility in Decatur, Illinois in 2011 and Ari, Shanie Cohen ("Cohen), and the Cohen Special Family Trust each invested $100,000 into the operating LLC. *Id.* at ¶¶ 16-17. The nursing home ceased operations on or about September 17, 2017 and distributions from the LLC had stopped in early 2016. *Id.* at ¶¶ 18-19. Throughout this time period, Feiner and/or FNR borrowed money from the LLC without repayment. *Id.* at ¶ 19.

### Mayfield Investment

Feiner again reached out to Ari in December, 2012 regarding a potential investment in a commercial office building in Mayfield, Ohio. *Id.* at ¶ 22. Ari invested in this property, but distributions suddenly stopped in 2016. *Id.* Investors were notified that the primary tenant of the property had vacated the property and that no more distributions would be made. *Id.* Shortly after the tenant vacated the property, the mortgage holder commenced a foreclosure action, citing several defaults, unpaid real estate taxes, mechanics liens, and other lieans. *Id.* Throughout this time period Feiner caused the operating LLC to loan him money while he also received excess distributions. *Id.* at ¶ 23.

### South Holland Investment

In January, 2013, Feiner approached Ari to invest in "an all inclusive senior care campus." *Id.* at ¶ 24. Feiner represented the facility as being 83% occupied and having approximately $13.8 million in gross revenue. *Id.* at ¶ 25. Due to these representations, Ari and Shanie invested $100,000, along with Lois Cohen ("Lois"), and the Cohen Special Family Trust. *Id.* at ¶ 26. Instead of granting Plaintiffs an interest in the entire facility, Feiner created a second LLC in which he took title of the more valuable portion of the facility, unbeknownst to Plaintiffs. *Id.* at ¶ 27. By splitting the property, Feiner was able to obtain a greater membership interest and a greater share of the proceeds. *Id.* at ¶ 28. Similar to other investments, Feiner directed hundreds of thousands of dollars to himself in the form of distributions and loans. *Id.* at ¶ 29. On September 30, 2016, Feiner sold the property without the

consent of the other investors (in violation of the LLC operating agreement) and kept all of the proceeds without distribution to any other members. *Id.* at ¶ 30.

## Mountain Crest Investment

Feiner next made fraudulent representations regarding a nursing facility in Cincinnati, Ohio in July, 2014. *Id.* at ¶ 34. Based on those representations, the Plaintiffs each invested $100,000, with Doniel Cohen ("Doniel") investing $120,000. *Id.* at ¶ 35. The FNR Mountain Crest LLC made distributions until early 2016. *Id.* Again, a review of the LLC ledger revealed that Feiner was using the LLC to make distributions and loans to himself and other related entities. *Id.* at ¶ 36.

## Morris Investment

The next investment involved a skilled nursing care facility in Morris, Illinois. *Id.* at ¶ 37-38. Again, Plaintiffs saw regularly quarterly disbursements until early 2016. *Id.* at ¶ 39. While Plaintiffs received no distributions, Feiner continued to receive distributions in amounts larger that what would properly be owed to him according to his ownership interest. *Id.* at ¶ 40.

## NVP Associates Investment

Doniel also invested $140,000 in FNR NVP Associates, LLC which in turn invested in another skilled nursing care facility. *Id.* at ¶ 42. Throughout the investment, Feiner made several misrepresentations to investors, including the purchase price of the property, the mortgage interest rate, and promised cash distributions. *Id.* at ¶ 43. Again, Feiner used the LLC as a means to withdraw unentitled distributions and loans. *Id.* at ¶ 45.

## **LEGAL STANDARD**

A Rule 12(b)(6) motion is meant to challenge the legal sufficiency of the complaint. *Christiansen v. Cnty. of Boone, Ill.,* 483 F.3d 454, 457 (7th Cir. 2007). To survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint must "state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The Court accepts all well-pleaded allegations as true and views them in a light most favorable to plaintiff. *Appert v. Morgan Stanley Dean Witter, Inc.,* 673 F.3d 609, 622 (7th Cir. 2012). Though, the Court need not accept as true statements of law or statements that are merely conclusory and unsupported factual allegations. *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011). Plaintiff's complaint must allege facts that establish its right to relief is more than speculative. *Cochran v. Ill. State Toll Highway Auth.,* 828 F.3d 597, 599 (7th Cir. 2016). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Essentially, the plaintiff must allege sufficient facts "to present a story that holds together." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010). In considering a 12(b)(6) motion, the Court considers the complaint itself along with "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *See Matthews v. Hughes,* 2015 WL 5876567, at *1 (N.D. Ill. Oct. 5, 2015) (citing *Philips v. Prudential Ins. Co. of Am.,* 714 F.3d 1017, 1020 (7th Cir. 2013)) (internal alterations and quotation marks omitted).

## DISCUSSION

### I. The PSLRA Exception to RICO (Counts I-III)

Plaintiffs bring their first three Counts under RICO. Defendants assert, among other arguments, that Plaintiffs' private RICO action is precluded by the Private Securities Litigation Reform Act amendment to § 1964(c). § 1964(c) provides:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold damages he sustains and the cost of the suit, including a reasonable attorney's fee, *except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.*

18 U.S.C. § 1962(c) (emphasis added). "The legislative history of subsection (c) reveals that Congress intended not only 'to eliminate securities fraud as a predicate offense in a civil RICO action,' but also to prevent plaintiffs from attempting 'to plead other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud.'" *See e.g., Hollinger Intern., Inc. v. Hollinger Inc.,* 2004 WL 2278545, at *5 (N.D. Ill. Oct. 8, 2004) (quoting H.R. Conf. Rep. No. 104-369, at 47 (1995).

Section 10(b) of the Securities Exchange Act makes it "unlawful for any person…[t]o use or employ, in connection with the purchase or sale of any security…, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j. "The elements of a section 10(b) Securities Exchange Act claim are: (1) a material misrepresentation or omission by the defendant in connection with the purchase or sale of securities; (2)

scienter; (3) reliance; (4) economic loss; and (5) loss causation." *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 617 (7th Cir. 2011). The Court considers the allegedly fraudulent scheme as a whole in determining whether the RICO claims properly fall within section 10(b). *See e.g., Hollinger,* 2004 WL 2278545 at *6. While the Seventh Circuit has not provided guidance on this issue, reviewing "courts broadly construe section 1964(c) to preclude wire and mail fraud from forming predicate acts under RICO 'if such conduct would also be actionable as securities fraud.'" *Id.* at *5 (quoting *In re Enron Corp. Sec. Lit.,* 284 F.Supp.2d 511, 619 (S.D. Tex. 2003)). For a claim to be actionable as securities fraud, "[i]t is enough that the scheme to defraud and the sale of securities coincide." *S.E.C. v. Zandford,* 535 U.S. 813, 822 (2002) (holding that broker's misappropriation of proceeds from the sale of securities constituted fraud "in connection with the purchase or sale of any security").

As a preliminary matter, Plaintiffs' investments in the various LLCs are considered investment contracts and subject to federal securities laws. *See e.g., Shirley v. Jed Capital, LLC,* 724 F. Supp. 2d 904, 910-11 (N.D. Ill. 2010) (finding that plaintiff's agreement to invest in the LLC was subject to federal securities law where plaintiff was a passive investor). Here, Plaintiffs were passive investors of LLCs controlled and operated by Feiner.

The pivotal question here is whether Defendants' allegedly fraudulent scheme was "in connection with the purchase or sale of securities." Plaintiffs leave little to the imagination as they concede in their Response that "some of Feiner's schemes would be possible causes of action involving the underlying securities transactions."

(Dkt. 21, pg. 4). Plaintiffs, however, attempt to distinguish away this concession by suggesting some of the fraudulent activity happened "subsequent to the investment." *Id.* Plaintiffs cannot artfully plead around the securities fraud exception to RICO in an attempt to advance their case past the pleadings stage. *See e.g., Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.,* 189 F.3d 321, 329-30 (3d Cir. 1999) ("Consequently, a plaintiff cannot avoid the RICO amendment's bar by pleading mail fraud, wire fraud and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud. Allowing such surgical presentation … would undermine the congressional intent behind the RICO Amendment."). Plaintiffs' concession notwithstanding, the Complaint serves as a thinly veiled securities fraud action and a fair reading of the Complaint leads to the inescapable conclusion that the claims are barred by the securities fraud exception.

After being presented with this argument, Plaintiffs hand-pick certain allegations from the Complaint in an attempt to circumvent § 1964(c)'s bar. However, even Plaintiffs' carefully selected allegations belie such a distinction as they each sound in securities fraud. In relevant part, Plaintiffs allege:

- "FNR borrowed sums from the LLC and have never repaid those sums" (¶ 19)
- "Feiner has caused the LLC to 'loan' monies to him and his related entities and has cause [sic] excess distributions to himself in excess of his share" (¶ 23)
- "hundreds of thousands of dollars being diverted to Feiner in the form of 'distributions' and loans to [Feiner]" (¶ 29)

- "Finer [sic] admitted to having secretly sold the properties and absconded with the funds" (¶ 32)

- "at least 14 other 'loans' to FNR…and more than $405,000 in distributions to Feiner," "Feiner used NVP as a personal piggy bank" (¶ 36)

- "induced Israeul Starck…to invest $2.5 million to purchase Feiner's membership shares" (¶ 46)

- "Feiner did not own the membership interests that he purportedly sold to other investors" (¶ 47)

- "Henry Lieberman was defrauded out of $1.5 million by promises of distributions in return for Feiner's membership shares." (¶ 48)

In short, Plaintiffs themselves classify Defendants' actions as a Ponzi scheme where Defendants "dangled promises of substantial profits in return for an initial investment in order to lure in potential victims." *Id.* at ¶ 2. The common thread through each of the investments is Plaintiffs' consistent allegation that Feiner would make fraudulent representations to induce investors and then treat the investment as his "personal piggy bank." *Id.* at ¶ 44. "[C]onduct undertaken to keep a securities fraud Ponzi scheme alive is conduct undertaken in connection with the purchase and sale of securities." *Bald Eagle,* 189 F.3d at 330. Regardless of whether the alleged wrongful behavior is classified as a Ponzi scheme, claims alleging fraudulently marketed investments followed by the improper management and sale of investment assets squarely sound in securities fraud. *See e.g., Moorehead v. Deutsche Bank AG,* 2011 WL 4496221, at *12 (N.D. Ill. Sept. 26, 2011) ("The Court concludes that

plaintiffs' complaint alleges a scheme concerning falsely marketed investments and knowingly fraudulent representations that the plaintiffs would make significant gains from those investments and would experience favorable tax consequences. The plaintiffs' RICO claims are actionable as securities fraud and are therefore barred by the PSLRA."); *see also Bald Eagle,* 189 F.3d at 330 ("Consequently, conduct undertaken to keep a securities fraud Ponzi scheme alive is conduct undertaken in connection with the purchase and sale of securities."). While it very well may be true that the allegations included wire, mail, and bank fraud, the fact that such fraud overlapped and was intertwined with securities fraud precludes Plaintiffs' ability to recover under RICO. *See Bald Eagle,* 189 F.3d at 330 ("This misrepresentation/omission, induced new investments. Such conduct may well constitute wire, mail or bank fraud, but it was also undertaken in connection with the purchase of a security. Thus, it cannot support a civil RICO claim after enactment of the PSLRA.").

Plaintiffs' concession that some of their causes of action are actionable as securities fraud is certainly problematic to their Complaint, but more damning is the language of the Complaint itself. Taken both individually and collectively, the allegations of the Complaint claim that Defendants perpetrated a fraud on Plaintiffs—the purchasers of securities. As such, the allegations are actionable in securities fraud and therefore Counts I-III are barred.

## II. Remaining State Law Claims (Counts IV-XI)

This leaves Counts IV-XI, where Plaintiffs assert several state law claims. Having dismissed the only federal claims in this action, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3)

## CONCLUSION

For the reasons stated within, Defendants' Motion to Dismiss is granted without prejudice. If Plaintiffs intend to amend their pleading, an amended complaint shall be filed within 28 days of the entry of this Order.

_____
Virginia M. Kendall
United States District Judge

Date: April 24, 2019